## OPELOUSAS COMPRESS CO., Inc. v. REPUBLIC INS. CO.

### No. 13270.

United States Court of Appeals
Fifth Circuit.

April 6, 1951.

Sol S. Goldman, New Orleans, La., Felix A. DeJean, Jr., Opelousas, La., for appellant.

Grove Stafford, Alexandria, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The solution of the question presented by this appeal involves the proper construction of an exclusion clause contained in a fire insurance policy endorsement providing extended coverage, including, among other insured risks, direct loss by explosion.[1]

There were seven identical suits against defendant insurance companies which were consolidated for trial and appeal, and we discuss them as one. The complaint alleged that while the insurance "was in force, the steam cylinder operating the cotton compress in the said premises exploded, causing the piston to penetrate the cylinder walls and fly through the roof, falling upon the building and damaging it * * *." The defendant filed a motion to dismiss upon the ground that the complaint failed to state a claim upon which relief could be granted, urging that the explosion alleged was not a risk insured against. The trial Court, in a memorandum opinion, held that the provisions of the exclusion clause were unambiguous and subject to construction by the Court as a matter of law, and specifically, that the words "steam engine" were unambiguous and "subject to judicial cognizance as a scientific fact," and that the word " 'engine' when used in connection with steam, can only mean a contrivance which harnesses the steam." Finding the "cylinder" to be the most important part of a steam engine and "more the steam engine than any other composite part," the Court thought the allegation that " 'the steam cylinder * * * exploded' " instead of a " 'steam engine' " was only a "play on words," since the words "steam engine" were construed as "synonymous with the excluded explosion." The Court accordingly sustained the motion to dismiss. The plaintiff appeals from this judgment.

It is the contention of appellant, as finally summarized, in argument and brief before us, that under Article 1946 of the Louisiana Civil Code reading: " 'The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use', it should have the opportunity of showing what the general and popular use of the term 'steam engine' embraces. * * * The sole question is whether the thing that

---

1. The exclusion provision provides: "Provisions Applicable Only to Explosion: This company shall not be liable for loss by explosion, rupture or bursting of steam boilers, steam pipes, steam turbines, steam engines, flywheels owned, operated or controlled by the insured or located in the building (s) described in this policy."

exploded is one and the same as a 'steam engine.' No question of construction of the contract is involved. Briefly stated, in ordinary and common parlance, and apart from technical definitions, is a 'steam engine' a 'steam compress' and *vice versa,* is a 'steam compress' a 'steam engine'?" The appellee, to the contrary, contends that the meaning of words of the policy provision are a matter for the determination of the Court and not for a jury, and that "the explosion of the cylinder is nothing less than, and nothing more than, an explosion of the engine." Definition of the words "cylinder," "engine," and "steam engine" are urged in support of this position.

■ Our consideration of the issues involved leaves us not entirely with either the appellant or the appellee. We think that the construction and application of the exclusion clause is a matter for the Court, but we are of the opinion that the trial Court erred in his interpretation of the breadth and scope of the exclusion provision and in holding, in effect, that the allegation that a steam cylinder operating the cotton compress exploded must, as a matter of law, be taken to mean that within the terms of the exclusion, a steam engine exploded.

■ The proper approach to a determination of the coverage of the insurance against direct loss by explosion provided by the policy, as restricted by the terms of the exclusion provisions, requires consideration of the language employed. While the matter is not entirely free from doubt, we are of the opinion that the term "steam engine," when considered in connection with its associated language and the provision as a whole, should be held to have a meaning restricted in application as thus determined by the words with which it is associated. The ruling of the trial Court gives to the words "steam engine" a meaning sufficiently broad to include any contrivance or apparatus operated by steam. The language of the provision in question, which includes also boilers, pipes, steam turbines and fly-wheels, properly means, we think, steam engines of the conventional type, those which, broadly stated, by the revolutions of its shaft provides a means of motive power

when connected to machinery. The words "steam engine", in general and popular use have an accepted meaning, we think, of an engine operated by steam to produce motive power by its revolutions induced by the set and forced operation of not only the force of steam in the cylinder, but its application upon the piston by means of the eccentric rod and valve rod opening and closing the valves to permit the entrance and exhaust of steam, and which by the revolutions thereby induced produces and furnishes motive power. Without attempting a technical discussion, we think the words "steam engine" in common acceptation mean an engine operated by steam and having the same function as the usual gas engine, so similar as a means of propulsion of machinery and automobiles. We are supported in this view by the dictionary and encyclopedic definitions and illustrations of steam engines. This conclusion is not weakened by the fact that a piston and cylinder are important parts of the conventional steam engine. The fact that some piece of machinery might have a part similar to that also found in a steam engine does not establish that such apparatus is a steam engine. If the term "steam engine" as employed in the provision now under consideration was intended to or should be held to have the same meaning as steam machinery or steam apparatus, there would be no necessity for the inclusion along with it of the term "steam turbine." It should be observed that a steam turbine (exclusion for explosions of which is expressly specified preceding the words "steam engine,"), has a similar meaning and resultant use as we have applied to the conventional steam engine, only the method of application of steam energy to obtain such result being different. Our conclusion is further strengthened by the association in connection with steam engines and steam turbines in the exception of "fly-wheels." This is a component and generally employed part of the conventional steam engine providing motive power by its revolutions, the purpose of which is to prevent fluctuations of speed in the revolution of the engine, and as defined by Webster, especially a heavy wheel "on an engine crankshaft to counter-

act variable torque during the stroke and to carry the engine over the dead centers." In the light of these considerations, we think the trial Court gave to the language of the exclusion too broad a meaning when he ascribed to it an exemption of liability from the explosion of any machinery operated by the application of steam energy by means of a cylinder and piston.

With the proper meaning of the terms of the policy provisions established, it results that there was error in sustaining the motion to dismiss. The question remains as to what feature of the case remains to be tried, since it is conceded by the appellee that there is no dispute as to the amount of damage, or insurance payable if the Court determines coverage under the policy. Thus the only issue which could remain is whether the steam compress, being operated as alleged by a steam cylinder, comes within the definition of a steam engine which we have enforced under the provisions of the policy. While we might be justified in declaring coverage as a matter of law based upon our understanding of the operation of a cotton compress, we prefer not to conclusively determine the matter upon the concessions made since the precise similarity or dissimilarity between the steam compress in question and a steam engine is not conceded. We therefore only reverse the judgment of the trial Court in sustaining the motion to dismiss and remand the cause for further proceedings in accordance with the views herein expressed.

Judgment reversed.